**MINA HAKAKIAN (SBN 237666)**
mhakakian@hwlgpc.com
**HAKAKIAN WILLIAMS LAW GROUP PC**
1541 Westwood Blvd., Second Floor
Los Angeles, California 90024
Tel.: (310) 982-2733
www.hwlgpc.com

Attorneys for Plaintiff,
**DETOX LA, LLC**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **DETOX LA, LLC,** a California Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>**BLUE CROSS AND BLUE SHIELD OF ILLINOIS,** an Illinois Corporation; **and EXELON CORPORATION,** a Pennsylvania Corporation<br><br>Defendants. | **Case No.: 2:26-cv-00047**<br><br>**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132(A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)** |

Plaintiff, Detox LA, LLC, a California Limited Liability Company ("Plaintiff," and/or "Detox LA"), alleges against Defendants BlueCross BlueShield of Illinois ("BCBS IL"), and Exelon Corporation ("Exelon") (collectively, "Defendants") as follows:

## I. INTRODUCTION

1. Plaintiff Detox LA is a freestanding, inpatient detox and residential facility, located in Los Angeles, California, which received valid assignments of benefits for medical detox treatment services performed, and seeks redress on behalf of patient plan members for improper denials of medical detox treatment insurance benefits.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, and pursuant to 29 U.S.C. § 1132 (e)(1) because the action seeks to enforce rights under the Employee Retirement Income Security Act of 1974 ("ERISA").

3. This Court is the proper venue for the action pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, including verification, and preauthorization communication, provision of services, and claim submissions, appeals originating from within this District.

4. Personal jurisdiction and venue are further proper because each Defendant conducts a substantial amount of business within the Central District of California.

## III. PARTIES

### a. The Plaintiff

5. Detox LA is a co-educational medical detox facility located in Los Angeles, California, dedicated to assisting individuals suffering from addiction in overcoming its adverse effects and beginning the path toward long-term recovery. Detox LA provides evidence-based medical detox treatment [1] and remains committed to supporting clients in achieving improved health, independence, and overall well-being by addressing the devastating impacts of addiction. Throughout its medical detox programs, Detox LA plays an active role in assisting patients in regaining their independence and beginning the path to long-term sobriety.

6. Detox LA provides a range of detox services designed to support individuals in taking the first steps toward recovery and regaining their independence, including alcohol, heroin, opiate, benzodiazepine, and comprehensive medical detox programs. Detox LA is committed to helping clients break the cycle of addiction and achieve lasting freedom from substance use disorders.

---

[1] Medical detox treatments are clinical programs that are designed to assist individuals who have developed a physiological dependence on alcohol or drugs. When such individuals stop using a substance, they experience withdrawal, which can make recovery challenging. Medical detox provides structured care, often as the first stage of recovery, and uses various treatment methods, including medication, when necessary, to manage withdrawal and support the individual's path to sobriety.

7. Detox LA is licensed and certified by the California Department of Health Care Services. The facility is licensed to provide "medically managed residential detoxification treatment," and holds an Incidental Medical Services ("IMS") license. This IMS license allows Detox LA, as a residential treatment facility, to offer limited on-site medical services that are incidental to its primary focus on substance use treatment. Through these IMS licenses, Detox LA can address medical issues that may arise during the detoxification and treatment process.

8. Detox LA is also accredited by the Joint Commission, signifying that the facility meets the highest national standards for quality, safety, and clinical care. The Joint Commission is a American based, independent non-profit that accredits and certifies nearly 21,000 healthcare organizations and programs, setting standards for quality and patient safety, awarding its Gold Seal of Approval®, and conducting unannounced surveys to ensure compliance with rigorous guidelines for various settings like hospitals, clinics, and long-term care facilities. As part of maintaining Joint Commission accreditation, Detox LA is subject to standards that go beyond basic licensure and govern areas including safety, clinical care, environment of care, medication management, staff competency, and emergency preparedness.

**i. <u>Patient Plan Members</u>**

9. Detox LA provided medical detox treatment to a patient who was the child of an active member of the Exelon Corporation Employees' Medical Expenses

Plan ("Exelon Plan" and/or "Plan") during the period of services between March 20, 2022, to April 14, 2022. For privacy purposes, the patient who received treatment from Detox LA is identified by the initials "Patient D" (hereinafter, "Patient" and/or "Patient D").[2]

**b. <u>The Defendants</u>**

10. Defendants are the proper party defendants for an ERISA benefits recovery action. See, *Harris Trust & Sav. Bank v. Salomon, Smith Barney, Inc.*, 530 U.S. 238, 247 (2000); *Cyr v. Reliance Standard Life Ins. Co.*, 647 F.3d 1202 (9th Cir. 2011).

11. ERISA governs all aspects of health, mental, and medical benefits under ERISA Plans and authorizes a civil action to recover unpaid and underpaid benefits and attorney's fees. Detox LA has standing to bring this lawsuit arising from its assignment from Patient D.

**i. <u>Exelon Corporation</u>**

12. Plaintiff is informed and believes that Exelon Corporation is a

---

[2] To safeguard patient privacy and comply with applicable confidentiality obligations, all personally identifying information has been omitted from this pleading. Plaintiff will disclose the patient's identity and related identifying details only in accordance with a duly entered Protective Order and all applicable federal and state privacy laws and regulations, including any governing HIPAA requirements. Absent such protections, Plaintiff will limit disclosures to de-identified information sufficient to state the claims and provide notice, while preserving the patient's confidentiality.

Pennsylvania corporation and maintains the Exelon Corporation Employees' Medical Expense Plan to provide medical and health care benefits for certain employees and former employees of the participating employer, as well as their dependents.

13. Plaintiff is informed and believes that the Plan shall comply with all applicable state and Federal law

14. Plaintiff is informed and believes that the Exelon Corporation Employee's Medical Expense Plan is a component benefit of the Exelon Corporation Health Care Program. Plaintiff is informed and believes that 2022 Summary Plan Description is the governing Plan for the services rendered to Patient D. Relevant Pages from the Plan are attached as *Exhibit 1*[3].

15. Plaintiff is informed and believes that the Plan is a self-funded employee benefit Plan governed by ERISA, and all questions concerning the interpretation of the terms of the Plan shall be determined under the Employee Retirement Income Security Act of 1974 ("ERISA").

16. Plaintiff is informed and believes that a Claim Administrator under the Plan is a person or entity appointed by the Plan Administrator to make preliminary or final benefit claim determinations. *Exhibit 1, SPD p. 4, Section 1.5*

---

3 Quoted Plan language containing the word "You" has been interchanged with the words "Plan members" in this Complaint for readability.

*– Claim Administrator*

17. Plaintiff is informed and believes that Exelon Corporation is the Plan Administrator and is responsible for the administration of the Plan. Plaintiff is further informed and believes that under the Plan, the Plan Administrator shall have all such powers and discretionary authority as may be necessary to discharge the Plan Administrator's duties under the Plan, including, but not by way of limitation, the discretionary power:

(i.) to interpret and construe the terms of the Plan;

(ii.) to supply any omission in the Plan;

(iii.) to correct any errors or inconsistencies;

(iv.) to make equitable adjustments for any mistakes or errors made in the administration of the Plan;

(v.) to determine whether services and supplies are necessary for treatment of an injury or illness for the Plan purposes and whether such services and supplies meet the acceptable standards of medical practice; and

(vi.) to determine all questions of eligibility and the status and rights of Employees, Retirees, Dependents and other persons under the Plan and the amount, manner and time of payment of any benefits under the Plan.

*Exhibit 1, SPD p. 47, Section 6.1 (b)*

18. Plaintiff is informed and believes that, under the Plan, benefits are payable to a participant or covered person only if the Plan Administrator, or its delegate, determines in its discretion that the participant or covered dependent is entitled to such benefits. *Exhibit 1, SPD p. 47, Section 6.1 (b)*

19. Plaintiff is informed and believes that the Plan Administrator shall be the Plan's agent for service of legal process. *Exhibit 1, SPD p. 48, Section 6.1 (c)*

20. Plaintiff is informed and believes that the Plan Administrator may allocate its responsibilities and may designate any person, partnership, corporation or other Plan Administrator to carry out any of its responsibilities with respect to the administration of the Plan, including the appointment of one or more Claim Administrators to evaluate benefit claims under the Plan. *Exhibit 1, SPD p. 47, Section 6.1 (d)*

21. Plaintiff is informed and believes that the Plan provides parity between mental health or substance use disorder benefits and medical/surgical benefits with respect to financial requirements and treatment limitations under group health plans and health insurance coverage offered in connection with the Plan, as required by Section 9812 of the Code and Section 712 of ERISA. *Exhibit 1, SPD p. 38, Section 4.1 (b) (12)*

22. Plaintiff is informed and believes that the Plan will not apply any

aggregate lifetime or annual dollar limits to mental health or substance abuse disorder benefits. *Exhibit 1, SPD p. 38, Section 4.1 (b) (12) (a)*

23. Plaintiff is informed and believes that the Plan will not apply any financial requirement or treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant financial requirement or treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification. *Exhibit 1, SPD p. 38, Section 4.1 (b) (12) (b)*

24. Plaintiff is informed and believes that contributions to the Plan are made by each Employer and each Eligible Employee, Eligible Retiree, or covered Dependents, as applicable, in the amounts determined from time to time by Exelon, based upon costs and coverage and such other factors as Exelon deems relevant. *Exhibit 1, SPD P. 38, Section 4.1 (b) (13)*

**ii. <u>BlueCross BlueShield of Illinois</u>**

25. Plaintiff is informed and believes that Exelon has contracted with BCBS IL to administer benefits under the Plan. BCBS IL as the Administrator Service Provider, and/ or Claim Administrator will receive the claim and process the claim.

26. Plaintiff is informed and believes that BCBS IL is a corporation organized and existing in the State of Illinois and doing substantial business in the

State of California. As one of many entities utilizing some form or derivative of the corporate names “BlueCross,” “BlueShield,” or “BlueCross BlueShield,” Defendant BCBS IL operates on a joint and cooperative nationwide basis as a licensee of a foundation known as the Blue Cross and Blue Shield Association (the “BCBS Association”). The names and symbols of BlueCross BlueShield are registered trademarks of the BCBS Association, and the nationwide business activities of BCBS IL are carried out in California and other states in accordance with and pursuant to the licensing provisions and rules of the BCBS Association.

27. Plaintiff is informed and believes that for each plan that BCBS IL services, BCBS of Illinois decides or participates in determining whether healthcare benefits claims will be paid and the payment amount (if any) and even has the plan authorization and responsibility of paying benefits to claimants, such as Plaintiff, directly out of ERISA plan assets. Plaintiff alleges on information and belief that both BCBS IL and Exelon Corporation had actual control and the responsibility of making benefits determinations for the healthcare services claim of Plaintiff.

## IV. <u>NON-PARTY AGENTS AND ADMINSTRATORS</u>

### a. <u>The Anthem Inc.</u>

28. Plaintiff is informed and believes that the Anthem, Inc. is a corporate holding company organized and existing in the state of Indiana. Anthem, Inc.

operates its various business activities in California by way of its corporate subsidiary known as Anthem Blue Cross. This California entity is one of a handful of large healthcare insurers that carry out substantial business of health insurance in this state.

29. Plaintiff is informed and believes that Anthem Blue Cross operates in its own name and on its own behalf as a California healthcare claims administrator and insurer. In addition, Anthem Blue Cross performs services on behalf of numerous entities bearing some form of derivative of the "Blue Cross" or "Blue Shield" names that carry out health insurer activities primarily outside of the state of California.

30. The BlueCard® Program is a nationwide claims system operated by the Blue Cross Blue Shield Association, which facilitates inter-plan coordination for out-of-state medical services.[4] It contractually separates responsibilities between the home plan, which administers the member's ERISA coverage, and the

---

4 Blue Cross Blue Shield Association is a national association of 34 independent, locally operated licensees, which collectively cover more than 109 million members in all 50 states, Washington, D.C., and Puerto Rico. The Blue Cross Blue Shield Association owns and manages the Blue Cross and Blue Shield trademarks and names in more than 170 countries around the world and grants licenses to independent companies to use the trademarks and names in exclusive geographic areas. Independence Blue Cross, *Your Trusted Blue Cross Blue Shield Association Licensee in Southeastern Pennsylvania*, https://www.ibx.com/about-us/blue-cross-blue-shield-association-pennsylvania (Last visited August 26, 2025)

host plan, which handles local claim intake and pricing.[5] The home plan is responsible for eligibility, utilization review, and benefit determinations, while the host plan applies local provider rates and transmits claims.

31. This role division, codified in BlueCard® materials, facilitates lawful fiduciary delegation and prevents unauthorized entities from exercising discretionary control. The separation is not merely administrative, it is essential to preserving transparency, accountability, and enforceable rights under ERISA. When host plans exceed their limited role, or home plans abdicate their obligations, the breakdown obscures who made the benefit determination, impedes oversight of delegated authority, and undermines the participant's ability to appeal or build an adequate administrative record. This violates ERISA's fiduciary structure by enabling unauthorized discretion without lawful delegation and by weakening the home plan's duty to independently exercise and monitor fiduciary authority.[6]

32. Plaintiff is informed and believes that all conducts by Anthem was

---

5 *Id.* at 5.

6 See 29 U.S.C. §§ 1104(a)(1), 1105(c); *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 891 (9th Cir. 2019) ("Delegation of fiduciary duties under ERISA must be made in accordance with the plan document and monitored adequately."); *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015) (fiduciaries must monitor delegated functions); *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 972–74 (9th Cir. 2006) (de novo review may apply where procedural irregularities taint the claim process).

conducted under the discretion and authority and on behalf of Exelon and BCBS IL and is legally attributable to Exelon and BCBS IL's fiduciary liability provisions, including 29 U.S.C. §§ 1104(a) and 1105(c).

## V. CORE FACTS UNDERLYING DETOX LA'S CLAIMS FOR PAYMENT

33. Patient D properly conveyed and transferred all pertinent rights to Plaintiff Detox LA, through a valid written assignment, including but not limited to the patient's healthcare benefit coverage rights, rights to insurance, rights to healthcare plan reimbursement, rights to appeal, and rights to sue for ERISA Benefits. The Assignments of Benefit for Patient D is attached as *Exhibit 2.*

34. Prior to admitting Patient D Detox LA verified coverage, eligibility, and applicable reimbursement rates with BCBS IL through a verification call. During the call, BCBS IL confirmed that the Plan was self-funded PPO Plan and provided through the subscriber's employer, Exelon Corporation. Patient D was identified as the dependent. BCBS IL further confirmed that assignments of benefits were accepted and that pricing would be based on the Medicare allowable rate. BCBS also confirmed that coverage was at 100% after the out of pocket was met. A list of the CPT Codes was provided during the call, and BCBS IL indicated that some codes required prior authorization, while others did not. The content of the verification call was reduced to writing by Detox LA, and a copy is attached to this

complaint as *Exhibit 3*.

35. ON November 25, 2022, Plaintiff also verified Patient D's eligibility and coverage through an online portal known as Availity. A copy of the Availity verification is attached to this Complaint as *Exhibit 4*.

36. Plaintiff is informed and believes that Availity, LLC is an independent company that provides administrative support services on behalf of Anthem Blue Cross. Plaintiff is informed and believes that through Availity, providers can have real-time, online discussions and get faster access to questions they have about prior authorization, appeal status, claims, benefits, eligibility, and more.[7] Anthem's website describes Availity as follows: "Many of the tools you need - such as eligibility and benefits inquiry, claims submission, claims status inquiry and authorizations - can now be accessed by logging into the Availity Portal."[8]

37. On March 22, 2022, BCBS IL expressly approved as medically necessary, eight days of inpatient rehabilitation treatment at Detox LA for Patient D. A copy of the approval is attached hereto as *Exhibit 5*.

---

[7] Anthem Blue Cross Provider Chat at: https://providers.anthem.com/docs/gpp/CA_CAID_PU_ProvideChatFlier.pdf (last visited September 23, 2024)

[8] *Learn About Availity*, ANTHEM BLUE CROSS AND BLUE SHIELD, https://providers.anthem.com/california-provider/resources/learn-about-availty (last visited June 1, 2024)

38. On April 15, 2022, BCBS IL expressly approved as medically necessary, five days of residential treatment at Detox LA for Patient D. A copy of the approval is attached hereto as *Exhibit 6.*

39. In reasonable reliance on Defendants' coverage representations, Plaintiff provided the authorized services. The care provided by Detox LA was consistent with standards set forth by the American Society for Addiction Medicine ("ASAM"). Detox LA would not have provided services but for these advanced coverage representations by Defendants.

40. From March 20, 2022, through April 14, 2022, Patient D received treatment at Detox LA's facility. Below is a summary chart of the claims, including Detox LA's billed amounts and Defendants' allowed and paid amounts.

*Table 1: Summary of Claims*

| Authorized Level of Care | Service Date | Rev Code | Billed Amount | Allowed Amount | Paid Amount |
|---|---|---|---|---|---|
| Subacute Detox | 3/20/2022 | 156 | $5,250.00 | $525.00 | $522.71 |
| Subacute Detox | 3/21/2022 | 156 | $5,250.00 | $525.00 | $522.71 |
| Subacute Detox | 3/22/2022 | 156 | $5,250.00 | $525.00 | $522.71 |
| Subacute Detox | 3/23/2022 | 156 | $5,250.00 | $525.00 | $522.71 |
| Subacute Detox | 3/24/2022 | 156 | $5,250.00 | $525.00 | $522.71 |
| Subacute Detox | 3/25/2022 | 156 | $5,250.00 | $525.00 | $367.50 |

| | | | | | |
|---|---|---|---|---|---|
| Subacute Detox | 3/26/2022 | 156 | $5,250.00 | $525.00 | $367.50 |
| Subacute Detox | 3/27/2022 | 156 | $5,250.00 | $525.00 | $367.50 |
| Residential | 3/28/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 3/29/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 3/30/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 3/31/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 4/1/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 4/2/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 4/3/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 4/4/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 4/5/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 4/6/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 4/7/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 4/8/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 4/9/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 4/10/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 4/11/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 4/12/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 4/13/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| Residential | 4/14/2022 | 1002 | $4,950.00 | $525.00 | $367.50 |
| **Total:** | | | **$131,100.00** | **$13,650.00** | **$10,331.05** |

33. For every claim submitted, Defendants issued an Explanation of Benefits ("EOB") which stated what the Billed Amount, Allowed Amount, and Paid Amounts were for the services rendered. The EOB purported to provide the following codes for its explanation of the Allowed Amounts:

- 833 - THIS DOCTOR/FACILITY ISN'T IN YOUR PLAN'S NETWORK. THEY CHARGED MORE THAN YOUR PLAN ALLOWS FOR THIS SERVICE. THEY MAY BILL YOU FOR THE DIFFERENCE BETWEEN

WHAT YOUR BENEFITS COVER AND WHAT THEY CHARGE. YOU CAN AVOID THESE CHARGES IN THE FUTURE BY USING DOCTORS/FACILITIES IN YOUR PLAN'S NETWORK.

- 45 - CHARGE EXCEEDS FEE SCHEDULE/MAXIMUM ALLOWABLE OR CONTRACTED/LEGISLATED FEE ARRANGEMENT. USAGE: THIS ADJUSTMENT AMOUNT CANNOT EQUAL THE TOTAL SERVICE OR CLAIM CHARGE AMOUNT; AND MUST NOT DUPLICATE PROVIDER ADJUSTMENT AMOUNTS (PAYMENTS AND CONTRACTUAL REDUCTIONS) THAT HAVE RESULTED FROM PRIOR PAYER(S) ADJUDICATION.
- 271 - THIS AMOUNT IS THE MEMBER'S RESPONSIBILITY TO PAY BECAUSE THESE SERVICES WERE PERFORMED BY A NON-PARTICIPATING PROVIDER.
- 242 - SERVICES NOT PROVIDED BY NETWORK/PRIMARY CARE PROVIDERS.

Copies of the EOBs are attached as *Exhibit 7.*

41. On November 25, 2022, Detox LA, as the Patient’s authorized representative and under an assignment of benefits, submitted a First Level of Appeal (“November 25, 2022 Appeal”) challenging the reductions and requesting documents pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iii) and (h)(5) to Blue Cross

Blue Shield of IL, at P.O. Box 60007, Los Angeles, CA 90060-007. In the November 25, 2022, Appeal, Detox LA specifically indicated that it was pursuing an appeal of the adverse benefit determination and underpayment of claims. A copy of the First Level Appeal is attached hereto as *Exhibit 8.*

42. In its November 25, 2022, appeal, Detox LA properly identified the patient, including the patient's date of birth, insurance identification number, plan sponsor name, group number, and the claim numbers for each claim. The appeal also included the date of service, billed amount, paid amount, number of days, plan-allowed amount, and check number for each claim, as well as the provider's name, NPI, and tax identification number. Detox LA informed Defendants that it was pursuing an appeal pursuant to an assignment and attached copies of the Explanation of Benefits and the Designation of Representative/Authorization form. The appeal provided a detailed explanation of the basis for its challenge and included Detox LA's demand. Despite this, Defendants failed to respond to the November 25, 2022, appeal letter in its entirety. *See, Exhibit 8*

43. On January 23, 2023, Detox LA, acting as the Patient's authorized representative and under an assignment of benefits, submitted a second appeal letter (the "January 23, 2023, Appeal") addressed to BCBS IL. The appeal again challenged the reductions and requested documents pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iii) and (h)(5). It provided all required information, including the

claim numbers; the member's group and identification number (with prefix); the patient's name and date of birth; the provider's name; and the NPI. The letter also itemized, for each claim, the billed amount, paid amount, number of days, plan-allowed amount, and check number. Detox LA further advised Defendants that it was pursuing the appeal pursuant to an assignment of benefits and expressly challenged the adverse benefit determination and resulting underpayment. The appeal set forth Detox LA's basis in detail and included its demand. A copy of the January 23, 2023, Appeal letter is attached as *Exhibit 9.*

44. On April 25, 2023, approximately six months after the January 23, 2023, Appeal, BCBS IL responded to the appeal[9]. In its response, BCBS IL erroneously stated that "all provider claim inquiries should be handled through [the] local Blue Cross and Blue Shield plan." The response provided by BCBS IL failed to address the points raised in the November 25, 2022, and January 23, 2023, Appeals and failed to provide any documents. A copy of BCBS IL April 25, 2023, letter is attached as *Exhibit 10.*

45. On May 4, 2023, Detox LA submitted its Second-Level ERISA Appeal (the "May 4, 2023, Second-Level Appeal"). To avoid further delay, Detox LA enclosed BCBS IL's claim review form, completed with the claim numbers; the

---

9 Although Plaintiff had appealed all its claims, BCBS IL's response was only with respect to the claim with the date of service of April 07, 2022.

member's group and identification numbers (with prefix); the patient's name; the provider's name; and the NPI. In the Second-Level Appeal, Detox LA again - - consistent with its November 25, 2022 and January 23, 2023 appeals - - notified Defendants that it was pursuing the appeal pursuant to an assignment of benefits and as the member's authorized representative, and demanded a complete copy of the Summary Plan Document, including any rates, tables, charts, or other methodologies relied upon in issuing the adverse benefit determination.. The appeal also provided a detailed explanation of Detox LA's basis and included Detox LA's demand. A copy of the May 4, 2023, Second-Level Appeal, without the exhibits referenced therein, is attached hereto as *Exhibit 11*.[10]

46. On July 20, 2023 - - nearly two months after Detox LA submitted its May 4, 2023, Second-Level Appeal - - BCBS IL responded by improperly refusing to review the appeal. BCBS IL falsely asserted that Detox LA had not provided required information, including the claim numbers; the member's group number and identification number (with prefix); the patient's name; the NPI; a detailed basis for the requested review; and submission on the prescribed Claim Review Form. A copy of the July 20, 2023, Letter is attached as *Exhibit 12*.

47. Due to BCBS IL refusal to provide a substantial response, Detox LA

[10] The Exhibits referenced in the May 4, 2023, Letter are attached as separate exhibits to this Complaint and are not reattached for efficiency, as they are duplicative of previously attached exhibits.

hired Law Offices of Leech Tishman Nelson Hardman ("Nelson Hardman" or "Nelson Hardman Law Office") to aid with its claims.

48. On December 23, 2024, Nelson Hardman submitted a formal Demand on behalf of Detox LA as the authorized representative of Patient D addressed to BCBS IL ("December 23, 2024, Demand Letter". A copy of the December 23, 2024, Demand Letter is attached without the exhibits referenced therein, is attached as *Exhibit 13*[11].

49. In its December 23, 2024, demand letter, Nelson Hardman, on behalf of its client, made a formal demand for the following to BCBS IL:

1. Cease and desist from denying and/or underpaying Detox LA's claims on the unsupported basis that the "charge exceeds usual and customary" rates.
2. Provide a detailed explanation of the methodology and rationale used to determine a reimbursement range of $525.00 per day for inpatient detox and residential treatment.
3. Remit full payment of all outstanding amounts, totaling no less than 50% of full billed charges; and
4. Produce a full copy of the following documents:
    a. Full and complete copies of all documents, records, and other

---

[11] The Exhibits referenced in the December 23, 2024 Demand Letter are attached as separate exhibits to this Complaint and are not reattached for efficiency, as they are duplicative of previously attached exhibits.

information relevant to each allegedly overpaid claim at issue, including but not limited to, a copy of any plan, policy, rule, guidelines, protocol, or other criterion that was specifically relied upon in making the adverse benefit determination;

b. Full and complete copies of all contracts, agreements, and documents under which each applicable benefit plan is established and/or operated, including, but not limited to, any Summary Plan Description (SPD) and administrative services agreements between BCBS IL and plan administrators or employers;

c. A complete transcript of telephone recordings between the insurance or Plan representatives and Detox LA, including its representatives, with respect to each claim, including without limitation verification of benefits, authorization and requests for status of the claim;

d. Any and all other documents, even those not specifically mentioned in this request, which you in any way considered or relied upon in making your adverse benefit determination. *See Exhibit 13.*

50. The December 23, 2024, Demand Letter informed BCBS IL that if BCBSIL's determinations were based on a pre-determined maximum allowable amount, its EOBs were deficient for failing to disclose the specific "rule, guideline, protocol, or other similar criterion" from which the maximum allowable amount was

derived for capping the reimbursement on Detox LA's services, in violation of 29 C.F.R. § 2560.503-1(g)(1)(v)(A). BCBSIL's failure to provide Detox LA with an ERISA-compliant EOB results in Detox LA being "deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(l). As such, Detox LA is entitled to pursue all available remedies under ERISA, including seeking recourse under Section 502(a). *See Exhibit 13.*

51. On January 7, 2025, BCBS IL responded to the December 23, 2024, demand letter ("January 7, 2025, Letter"). In its letter, BCBS IL stated that the claims were processed correctly and that no further reimbursement was available and provided a cursory explanation, indicating that for out-of-network professional services, the Allowed Amount was the Medicare Reimbursement Rate. Despite Detox LA's demand for documents, as the Patient's authorized representative and pursuant to 29 C.F.R. § 2560.503-1(g)–(j), BCBS IL failed to provide any documents. A copy of the January 7, 2025, letter is attached as *Exhibit 14.*

52. On February 4, 2025, Nelson Hardman Law Offices responded to BCBS IL's January 7, 2025, and demanded documents and informed BCBS IL of Detox LA's intent to sue. On the same day, Nelson Hardman Law Offices submitted

a Demand for Documents and Notice of Intent to Sue to Exelon Corporation as well. A copy of the February 4, 2025, Letters to Exelon Corporation and BCBS IL are attached without the attachments referenced therein, as *Exhibit 15*.[12]

53. In this letter, Nelson Hardman informed Defendants that Defendants' statement constituted an admission that it incorrectly priced Provider's claims. Provider rendered 24-hour inpatient detoxification and residential care services, billed correctly using UB-04 forms. The benefit plan provision cited by Defendants applies only to out-of-network professional services, not inpatient facility services, making it inapplicable. Defendants' reliance on a "Medicare Reimbursement Rate" has no basis, as no such rate exists for the services provided. As a result, Defendants arbitrarily paid Provider less than 10% of billed charges - - less than half the rates it allows for less intensive "Intensive Outpatient Care" - - demonstrating payments that are arbitrary, unsupported by the Plan, and in violation of the member's rights and fiduciary duties. The letter also reiterated Detox LA's request for all relevant plan documents, contracts, communications, and any other materials relied upon, and asked that Defendants immediately acknowledge receipt, provide the documents, and reprocess the claims at no less than 50% of billed charges to avoid litigation under ERISA and California law. *See Exhibit 15.*

---

12 The attachments referenced in the February 4, 2025, Letters are attached as separate exhibits to this Complaint and are not reattached for efficiency, as they are duplicative of previously attached exhibits.

54. On February 12, 2025, BCBS IL provided a letter informing Detox LA that, based on the Plan, the January 7, 2025, completed the internal appeal process. A copy of the February 12, 2025, Letter is attached hereto as *Exhibit 16.* This letter failed to provide any response to the claims raised in the February 4, 2025, letter and failed to provide any of the documents requested.

55. On February 18, 2025, BCBS IL provided selective pages from the Summary Plan Description and Explanation of Benefits and informed Plaintiff for the first time that Plaintiff may contact the Plan Administrator, Exelon Corporation, to request Plan documents. A copy of the Letter is attached as *Exhibit 17.*

56. On March 5, 2025, Exelon Corporation provided a response to the February 4, 2025, letter and provided a copy of the Exelon Corporation Employee's Medical Expense Plan and Form 5500. A copy of the Letter is attached as *Exhibit 18.*[13]

57. In its letter Exelon indicated that it was reviewing the validity of the claims and appeals and that if the Plan determines that these claims and appeals were valid, it will provide a copy of the document that must be disclosed pursuant to DOL Reg. Section 2560.503-(h)(2)(iii). In its letter, Exelon responded by claiming that

13 The copy of the Plan attached to this letter is not attached to this complaint due to its volume and has been removed. Portions of the Plan attached to this letter that are relevant to this Complaint have been attached to this Complaint as Exhibit 1.

the claims and appeals were invalid or untimely because they were submitted by Plaintiff's billing and appeal representative. The letter invited Plaintiff to engage in a call discussion with respect to the points raised in its letter including the reference-based pricing for out-of-network claims. *See Exhibit 18.*

58. On March 12, 2025, Nelson Hardman Law firm on behalf of Detox LA responded to Exelon's March 5, 2025, letter. A copy of the March 12, 2025, letter is attached as *Exhibit 19.*

59. In its letter, Plaintiff rejected Defendants' argument that claims and appeals were invalid or untimely because they were submitted by Plaintiff's billing and appeal representative. Detox LA informed Defendants that the provider billing and appeal representative was an authorized representative of Detox LA, engaged as an independent contractor, which was standard practice in healthcare billing. Furthermore, the Authorized Representative Form executed by Detox LA explicitly authorized Detox LA and its representatives to act on the member's behalf, and therefore, the provider billing and appeal representative was properly authorized to submit correspondence, make requests, and represent providers. This letter further stated that Exelon's refusal to respond to valid demands for documents under 29 C.F.R. § 2560.503-1 violated the rights of Provider and its patient. *See Exhibit 19.*

60. In its March 12, 2025, Letter, Plaintiff also informed Exelon that there was no Medicare Reimbursement Rate applicable to inpatient detoxification and

residential care facility services, and as such, the Plan had arbitrarily applied rates for professional services, resulting in unreasonably low payments. Nelson Hardman requested a call to discuss further. *See Exhibit 19.*

61. The phone calls between outside counsel for Plaintiff and counsel for Exelon did not resolve the issues, and Plaintiff thereafter filed the instant action.

## VI. <u>DETOX LA'S BILLING SUBMITTED TO DEFENDANTS PROVIDED ALL NECESSARY INFORMATION TO SUPPORT CLAIM PAYMENT</u>

62. After the Defendants' representative verified that medical detox treatment was covered and after authorization was obtained for eight days of inpatient rehabilitation and five days of residential treatment, Detox LA admitted Patient D and provided medically necessary services. The care provided by Detox LA was consistent with industry best practices and in accordance with the standards established by the American Society for Addiction Medicine ("ASAM").

63. Contemporaneously with Patient D's care, Detox LA properly submitted industry-standard UB-04 Form electronically for each date of service to Defendants. Copies of the claim forms are attached as *Exhibit 20.*

64. In all instances, the services were billed accurately using the correct Bill Type, Revenue Codes, HCPCS/CPT codes, POS codes, and, where applicable, Modifiers. Additionally, the claim forms included the provider's name and address,

the patient's name, address, sex, and identification number, as well as the dates of service. Each claim form contained all required information in standardized terminology with sufficient detail to enable the Defendants to review and process the claim in the ordinary course of business. *See Exhibit 20.*

65. In every instance where services were provided, and a claim form was submitted, Defendants accepted Plaintiffs UB-04 claim form for processing without objection to its format, completeness, or Plaintiff's assignee status and acknowledged that these services were covered and issued an EOB with payment. *See Exhibit 7.*

66. On each claim form submitted by Detox LA, Detox LA, marked a "Y" in "box #53" of the UB-04 claim. (*See Exhibit 20*) *By* marking box #53 of the UB-04 claim form, Plaintiff indicated that it had obtained a valid Assignment of Benefit[14]. This entry served as a formal notice that Plaintiff was asserting derivative rights under ERISA as Patient D's authorized assignee. This entry affirmed and informed the Defendants that Detox LA was asserting its claims for payment pursuant to an assignment from Patient D from the onset of the claim billing process.

67. Plaintiff is informed and believes that any written instructions, notices,

14 Box 53 on the UB-04 claim form is the designated field used to indicate the provider has obtained a valid Assignment of Benefits and is requesting direct payment of Plan benefits. Industry-standard billing protocols and guidance from the National Uniform Billing Committee recognize this field as the formal method of notifying payers that the provider is asserting derivative rights.

or other communications from Participants, distributees, beneficiaries, or any other person entitled to, or claiming, benefits under the Plan, when directed to the Plan Administrator, shall be deemed duly given, made, or transmitted:

(a) upon delivery to the location specified on the forms prescribed by the Plan Administrator for such communications; or

(b) upon transmission via interoffice mail, electronic mail, facsimile, or first-class U.S. mail, postage prepaid, properly addressed to the email address, facsimile number, or mailing address specified on such forms.

*Exhibit 1, SPD p. 50, Section 6.4, Notice to the Plan Administrator.*

68. Notice of Plaintiff's claim and status of an assignee was duly given under the Plan once Detox LA submitted its UB-04 Claim form for processing. *See Exhibit 20.* Defendants accepted Plaintiff's UB-04 Claim form for processing without objection to its format, completeness, or Plaintiff's assignee status. *See Exhibit 7.* By receiving and adjudicating the claims, the Defendants acknowledged the validity of the submission and treated Plaintiff as the proper claimant and assignee. Defendants' acceptance and processing of the claims without challenge to Plaintiff's status as assignee is consistent with waiver of any purported anti-assignment clause. *See Exhibit 7.* Based on this conduct, Plaintiff reasonably understood that Defendants would not dispute its standing under ERISA.

///

## VII. DEFENDANTS VIOLATED ERISA STANDARDS BY ISSUING SEVERELY DEFICIENT EXPLANATION OF BENEFITS AND FAILING TO PAY PLAINTIFF'S CLAIMS

69. For every claim submitted, Defendants issued an Explanation of Benefits which provided the Allowed Amount, which totaled to less than 10% of the billed charges and was not in accordance with the reimbursement rate under the Plan and the representations made. *See Exhibit 7.*

70. Under ERISA, "every employee benefit plan must establish and maintain reasonable claims procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations," and claim procedures will only be deemed "reasonable" upon complete compliance with "this section." 29 C.F.R. section 2560.503-1 (b). 29 C.F.R. section 2560.503-1(1)(l) instructs that if a plan fails to consistently adhere to all of the listed requirements, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any additional remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." (Emphasis added).

71. Defendants violated 29 C.F.R. section 2560.503-1 by issuing severely deficient Explanation of Benefits. Significantly, 29 C.F.R. section 2560.503-1 (g)(1),

"Manner and Content of Notification of Benefit Determination," requires that plan administrators shall provide a claimant with a written or electronic notification of any adverse benefit determination as follows:

> "…The notification shall set forth, in a manner calculated to be understood by the claimant - -
>
> i. The specific reason or reasons for the adverse determination;
>
> ii. Reference to the specific plan provisions on which the determination is based;
>
> iii. A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> iv. A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.
>
> v. If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule or a statement that such a rule was relied upon and that a copy will be provided free of charge upon request."

29 C.F.R. § 2560.503-1(g)(1) mandates all five specific disclosure sub-requirements

that must be satisfied in any adverse benefit determination. Defendants violated 29 C.F.R. section 2560.503(1) by failing to meet the listed requirements when issuing their EOBs. These procedural violations support a claim for improper denial of benefits under 29 U.S.C. § 1132(a)(1)(B), as they deprived Plaintiff of a meaningful opportunity to assert a challenge the denials and rendered the decision fundamentally unreliable. Furthermore, as Defendants have failed to provide a reasonable claim procedure, Plaintiff is deemed to have exhausted administrative remedies. *See Exhibit 7.*

72. Defendants violated 29 C.F.R. § 2560.503-1(g)(1)(i), which requires that an adverse benefit determination include "the specific reason or reasons for the adverse determination." Defendants only listed the numeric denial codes 833, 45, 271, 2442, which were ambiguously defined without any reference to the Plan provision. This vague coding scheme did not inform Plaintiff why coverage was reduced and thus failed to satisfy the regulatory requirement for specificity. Moreover, Defendants failed to disclose the methodology used to calculate the "Allowed Amounts" for the procedures without citing any applicable Plan exclusion, limitation, or other authority, further obstructing Plaintiff's ability to understand or contest the basis for the reductions. *See Exhibit 7.*

73. Defendants violated 29 C.F.R. § 2560.503-1(g)(1)(ii), which requires that an adverse benefit determination include "reference to the specific plan

provisions on which the determination is based." Defendants failed to cite or identify any reimbursement formula, pricing methodology, or specific provision of the governing Plan, even in general terms, in their EOBs. Defendants' omission prevented Plaintiff from understanding the basis for the reduction and deprived Plaintiff of any ability to evaluate or challenge the legitimacy of Defendants' benefit determination. *See Exhibit 7.*

74. Defendants violated 29 C.F.R. § 2560.503-1(g)(1)(iii), which mandates a "description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." Defendants' EOBs provided no such description. They failed to identify any deficiencies in Plaintiff's claim submission, offer any guidance as to what further documentation was required, or explain why any additional information might be needed to evaluate the claim. These omissions denied Plaintiff a fair opportunity to supplement the record or cure any perceived defects, as required by ERISA's procedural safeguards. *See Exhibit 7.*

75. 29 C.F.R. section 2560.503-1 (v) requires that "claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claims." Plaintiff is informed and believes that

Defendants failed to implement proper administrative processes and safeguards, since Defendants intentionally failed to pay Plaintiff's claim according to the Plan and hindered Plaintiff's recovery efforts by issuing inadequate EOB explanations and appeal responses that contained false and misleading statements.

**a. <u>Defendants Failed to Reimburse the Claims According To The Plan Terms</u>**

76. To state an ERISA claim under § 1132 (a)(1)(B), a plaintiff must allege the applicable ERISA Plan and identify the provisions of that plan that entitle the plaintiff to benefits. *Doe v. CVS Pharm., Inc.,* 982 F.3d 1204, 1213 (9th Cir. 2020). While all of the relevant provisions of the ERISA Plan need not be recited in the Complaint, *ABC Services Grp., Inc. v. Aetna Health and Life Ins. Co*., 2023 WL 6532648, *1 (9th Cir. 2023), the plaintiff must allege sufficient plan provisions so that a reasonable person could ascertain the plan's intended benefits, the class of beneficiaries, the source of financing, and the procedures for receiving benefits. *See, e.g., Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.* 99 F. Supp. 3d 1110, 115 (C.D. Cal. 2015).

77. Based on the express representation made by the Defendants, the Plan accepts assignment. *See Exhibit 3.*

78. Plaintiff is informed and believes that Mental Health and substance abuse care is covered under the Plan. *Exhibit 1, SPD p.22, Expenses Covered under*

*the PPOS.*

79. Plaintiff is informed and believes that the Plan covers services and supplies provided for the purpose of preventing, diagnosing, and treating behavioral disorders, psychological disorders or injuries or substance abuse addiction. *Exhibit 1, SPD p.28, What's Covered.*

80. Plaintiff is informed and believes that under the Plan, the member may see any provider they choose and have the option to go outside the network for treatment. When a member chooses to see an out-of-network provider, the Allowed Amount for out-of-network professional services under the Plan will be based on the Medicare Reimbursement Rate. *Exhibit 1, SPD p.11, Allowed Amount.*

81. Plaintiff is informed and believes that the Allowed Amount Medicare Reimbursement Rate under the Plan is the amount Medicare will reimburse for a particular medical service or supply. *Exhibit 1, SPD p.13, Medicare Reimbursement Rate.*

82. Plaintiff is informed and believes that "Allowed Amount" is the maximum amount the Plan pays for a covered healthcare service. *Exhibit 1, SPD p.13, Medicare Reimbursement Rate.*

83. Plaintiff is informed and believes that under the Plan, for covered out-of-network services that are not recognized or reimbursed by Medicare, payment is based on the lesser of the Administrative Service Provider's applicable proprietary

fee schedule or the actual charge of the provider. For out-of-network covered services not recognized or reimbursed by Medicare or the Administrative Service Provider's fee schedule, payment is 50% of the actual charge of the provider. *Exhibit 1, SPD p. 16, In-Network vs. Out of Network.*

84. The Patient received inpatient detoxification and residential care services from Detox LA. The services provided by Detox LA were 24-hour inpatient facility services that were correctly coded and billed using Revenue Codes, HCPCS/CPT codes, POS codes, and, where necessary, modifiers on standard industry UB-04 claim forms. These services were not *professional services, but rather facility services.* The two HCPCS/CPT codes utilized for the facility services were H0010 and H0018.

85. H0010 is a HCPCS level II code that stands for "alcohol and/or drug services; sub-acute detoxification (residential addiction program inpatient)." This code is utilized to bill for medically supervised detoxification services provided in residential setting for individuals with substance use disorders. This code represents a critical phase where patients receive 24-hour supervision and support as they safely withdraw from substances. Services under H0010 include psychiatric evaluation, continuous nursing supervision, ongoing medical and withdrawal monitoring, and daily physician or nurse practitioner rounds. Patients receive medication management and tapering protocols multiple times per day, CIWA/COWS

assessments, and vital sign checks every two to four hours, and daily clinical and psychosocial assessments with corresponding progress notes. Therapeutic services include daily psychoeducation and group counseling as clinically appropriate, individual counseling at least weekly, and regular case management and discharge planning. Additional support includes toxicology screenings as needed, structured nutrition and meal monitoring, and family engagement through calls or sessions one to two times per week.

86. H0018 is the HCPCS code for short-term residential treatment in a non-hospital residential program. It is billed on a per diem basis, meaning the provider submits one claim per day of service. This level of care delivers a structured setting with 24/7 supervision, supported by both clinical services and medical oversight. Services include a psychosocial assessment and development of an individualized treatment plan, along with three to five daily therapeutic groups such as cognitive behavior therapy techniques ("CBT"), dialectical behavior therapy ("DBT"), and relapse-prevention programming. Patients receive individual therapy one to two times per week, case management several times per week, and ongoing family communication or therapy. Daily psychoeducation, life-skills training, experiential therapies, and community-based living support are also provided, along with drug testing as needed and regular meal services. Treatment includes the development of both a comprehensive discharge plan and a relapse-prevention plan.

87. For every claim submitted, Defendants issued an EOB stating an Allowed Amount that totaled less than 10% of the billed charges which was inconsistent with both the Plan's reimbursement requirement and Defendants' representations. Plaintiff is further informed and believes that no Medicare reimbursement rates apply to the inpatient detoxification and residential care services provided by Detox LA and therefore any payment calculation based on Medicare is not in accordance with the Plan.

88. Plaintiff is informed and believes that the Allowed Amounts issued by BCBS IL were less than half of the rates BCBS IL allows for Intensive Outpatient ("IOP") services - - an indication that Defendants reimbursed Detox LA at rates significantly below rates paid for less intensive levels of care. Indeed, the reimbursement rates provided are roughly equivalent to what BCBS IL pays for routine, 45-minute outpatient group therapy sessions and are not in accordance with the Plan terms or the representations made.

89. The Explanations of Benefits purported to provide vague, non-descriptive codes that provided no explanation or objective basis for how the Allowed Amounts were calculated, nor did they disclose the methodology used. The EOBs further failed to demonstrate any connection to the Plan or the Plan's methodology for determining Allowed Amounts. The EOBs also did not cite any relevant Plan terms, exclusions, limitations, or other supporting authority. *See*

*Exhibit 7.*

## VIII. DETOX LA HAS EXHAUSTED ADMINISTRATIVE REMEDIES

90. Defendants issued EOBs that failed to comply with ERISA's disclosure requirements. Plaintiff lacked access to the specific reasons, governing Plan provisions, and reimbursement methodology necessary to prepare an informed appeal. Nevertheless, Plaintiff timely submitted appeals for the adverse determinations, despite being deprived of the information necessary to meaningfully challenge the denial. These appeals satisfied the administrative exhaustion requirement applicable to ERISA claims and under the Plan.

91. Plaintiff's claims and appeals are exhausted under the Plan and based on Defendants' confirmation. On January 7, 2025, in response to its multiple appeals under the Plan, Plaintiff was informed, "Your internal appeal rights have now been exhausted." *See Exhibit 14.*

### a. Administrative Remedies Are Exhausted Based on Improper EOB Documents or In the Alternative Was Waived or Exhausted Due To Defendants' Procedural Violations

92. Defendants issued EOBs that failed to comply with ERISA's disclosure requirements. Plaintiff lacked access to the specific reasons, governing Plan provisions, and reimbursement methodology necessary to prepare an informed appeal. Nevertheless, Plaintiff timely submitted appeals for the adverse

determinations, despite being deprived of the information necessary to meaningfully challenge the denial. These appeals satisfied the administrative exhaustion requirement applicable to ERISA claims.

93. Plaintiff's claims and appeals are exhausted under the Plan. On January 7, 2025, in response to its multiple appeals under the Plan, Plaintiff was informed, "Your internal appeal rights have now been exhausted." *See Exhibit 14.*

94. For the claim events in this action, Defendants provided EOBs which violated applicable claims procedures regulations governing ERISA Plans as set forth in 29 C.F.R. section 2560.503-1. Of particular significance in this case are the ERISA regulations dealing with "Manner and Content of Notification of Benefit Determination" set forth in 29 C.F.R. section 2560.503-1 (g)(1). This section requires that the plan administrator provide a claimant with a written or electronic notification of any adverse benefit determination. The regulations require the following:

> "The notification shall set forth, in a manner calculated to be understood by the claimant - -
>
> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information

necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review."

95. Defendants have violated applicable claims procedure requirements by providing insufficient notifications of adverse benefit determination. Regulations set forth a consequence of a failure by Defendants to comply with adverse benefit notification requirements in its EOBs and/or appeal denials. 29 C.F.R. section 2560.503-1(1) provides:

"(l) Failure to establish and follow reasonable claims procedures:

In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

93. By issuing defective EOBs, Detox LA is deemed by law to have

exhausted administrative remedies, because Defendants failed to establish and follow reasonable claims procedures as required by ERISA. Defendants failed to process claims submitted by the Plaintiff in a manner consistent or substantially in compliance with ERISA regulation 29 C.F.R. section 2560.503-1. Among other things, Defendants:

- Failed to set out the specific reason for underpayment/nonpayment of Detox LA's claim in its EOB transmitted to Detox LA during the review process, including specifically failing to set out any anti-assignment clause or other limiting provisions contained in the Plan as a reason for nonpayment or underpayment; *See Exhibit 7*
- Failed to reference the specific Plan provision upon which its underpayment determinations were based upon, including specifically failing to reference any anti-assignment clause or other limiting provisions contained in the Plan documents; *See Exhibit 7*
- Failed to give a description of additional material or information which was needed to pursue and perfect the claims, and an explanation of why such information was necessary; *See Exhibit 7*
- Failed to provide Plan documents, or internal rules, guidance, protocols, or other criteria upon which the underpayment determinations were based; *See Exhibit 7*

- Failed to state the underpayment determinations in a manner calculated to be understood by Plaintiff, including specifically failing to state in a timely manner that anti-assignment clause(s) and/or limiting provisions in the Plan documents would be relied upon as a grounding for underpayment or denial of benefits; *See Exhibit 7*
- Failed to provide a reasonable opportunity for full and fair review of the underpayment determinations, including specifically failing to state in a timely manner that the anti-assignment clause and/or other limiting provisions in the Plan document would be relied upon as a grounding for underpayment or denial of benefits; *See Exhibit 7*
- Employed policies designed to unduly hamper the review and appeal of claims submitted by Plaintiff, including specifically failing to state in a timely manner that an anti-assignment clause and/or other limiting factor in the Plan document would be relied upon as a grounding for underpayment or denial of benefits; *See Exhibit 7*
- Acted systematically in a manner which rendered the administrative appeal process a futile and meaningless endeavor, including specifically failing to state in a timely manner that anti-assignment clause and/or other limiting factors in the Plan document would be relied upon as a grounding for underpayment or denial of benefits; *See Exhibit 7*

- Failed to provide a description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the Plaintiff's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review and failing to state in a timely manner that an anti-assignment clause and/or other limiting factors in the Plan documents would be relied upon as a grounding for underpayment or denial of benefits. *See Exhibit 7*

96. Defendants have systematically violated the applicable claims procedure regulations governing ERISA Plans as are set forth in 29 C.F.R. §2560.503-1, and in this situation, case law declares that plaintiff is deemed to have exhausted administrative remedies. In *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719 (9th Cir. 2012), the court pointed out that the ERISA statute itself requires that an administrator who denies a claim must explain the "specific reasons for such denial" and provide a "full fair review" of the denial. These requirements are underscored by the regulation of the claims, which further call for the claimant to be given "information about the denial, including 'the specific plan provisions' on which it is based on 'any additional materials or information necessary for the claimant to perfect the claim.'" *Harlick*, 686 F. 3d. at 719 (quoting 29 C.F.R. § 2560.503-1(g)). *Strom v. Siegel Fenchel & Peddy P.C. Profit Sharing Plan,* 497 F.3d 234, 246 (2d Cir. 2007) (stating the denial of the claim failed to meet the notice

requirements of section 1133 to adequately set forth the reasons for denial, the plan's review procedures and rights for further appeal, so the plan administrators were precluded from asserting a failure to exhaust administrative remedies); *Cromer-Tyler v. Teitel*, 294 F. App'x 504, 508 (11th Cir. 2008) (finding exhaustion excused because the plan administrator's letter informing the participant that her benefits under the plan were terminated was inadequate; it did not contain a specific reason for the determination, did not refer to specific plan provisions, and did not describe procedures necessary to review the claim)." "[W]hen an employee benefits plan fails to establish or to follow 'reasonable claims procedures' consistent with the requirements of ERISA, a claimant need not exhaust because his claims will be deemed exhausted." *Barboza v. Cal. Ass'n of Pro. Firefighters*, 651 F. 3d 1076 (9th Cir. 2011).

97. Although Plaintiff was under no obligation to appeal the underpayments, Detox LA nevertheless appealed every claim and retained outside counsel to pursue all available administrative remedies before filing suit. However, both Plaintiff's appeals and the administrative efforts undertaken by Detox LA's counsel proved futile and resulted in no additional payment.

98. ERISA requires that claimants whose benefits are denied must be afforded a "full and fair review" upon appeal. *See* 29 U.S.C. § 1133(2). The Department of Labor's implementing regulations under 29 C.F.R. § 2560.503-1(h)

impose specific procedural protections to ensure that right is honored. Defendants failed to comply with those protections. These failures deprived Plaintiff of the opportunity to meaningfully contest the denial and thereby violated ERISA's procedural mandates. This supports a claim for improper denial of benefits under 29 U.S.C. § 1132(a)(1)(B).

99. Defendants violated 29 C.F.R. § 2560.503-1(h)(3)(iii), which requires that an appeal be reviewed in a manner that considers all issues and materials submitted and results in a reasoned, responsive explanation. Defendants failed to issue any substantive explanation that addressed Plaintiff's appeal grounds or the issues raised therein. This failure indicates that no meaningful review occurred and constitutes a procedural violation of ERISA's full and fair review requirements.

100. In the alternative, any further obligation to exhaust administrative remedies is excused because Defendants failed to comply with ERISA's mandatory procedural safeguards. Specifically, Defendants failed to: (i) issue an explanation of benefits that complied with the disclosure requirements of 29 C.F.R. § 2560.503-1(g)(1); (ii) provide access to relevant plan documents or internal criteria during the appeal process, in violation of § 2560.503-1(h)(2)(iii); and (iii) conduct a full and fair review of the appeal as required by 29 U.S.C. § 1133(2) and § 2560.503-1(h)(3).

101. In the alternative, Defendants waived any exhaustion defense by failing to comply with ERISA's mandatory procedural safeguards. Their failure to issue

compliant EOBs, provide relevant plan documents upon appeal, or conduct a full and fair review as required under 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(h) rendered the administrative process fundamentally defective. These violations foreclosed any meaningful opportunity to contest the denial and, therefore, nullify any remaining exhaustion requirement.

**b. <u>Administrative Remedies Are Exhausted Under the Plan</u>**

102. Plaintiff is informed and believes that the claims should be submitted to the Plan Administrator or Claims Administrator. In return, the Plan Administrator or Claims Administrator shall

(i) provide adequate notice in writing to any Participant or beneficiary whose claim for benefit is denied, setting forth specific reasons for such denial and written in a manner calculated to be understood by such Participant or beneficiary and

(ii) (ii) afford a reasonable opportunity to any Participant or beneficiary whose claims for benefits has been denied for a full and fair review by the Plan Administrator or Claims Administrator of the decision denying the claim. *Exhibit 1, SPD p. 49 Section 6.2, Claim Procedures*

103. Plaintiff is informed and believes that written directions, notices and other communications from Participants or distributees or any other person entitled to or claiming benefits under the Plan to the Plan Administrator shall be deemed to

have been duly given, when:

> "made or transmitted either when delivered to such location as shall be specified upon the forms prescribed by the Plan Administrator for the giving of such directions, notices and other communications when transmitted through interoffice mail, electronic mail, facsimile or mailed by first class mail with postage prepaid and addressed to the address at the electronic mail address, facsimile number or address specified upon such forms.

*Exhibit 1, SPD p. 50, Section 6.4, Notice to the Plan Administrator.*

104. Plaintiff is informed and believes that a notice of benefit denial under the Plan shall be in writing and include the following:

- The reason for the denial;
- A reference to the benefit plan provisions on which the denial is based;
- A description of additional information which may be necessary to perfect an appeal and an explanation of why such material is necessary;
- Subject to privacy laws and other restrictions, if necessary, the identification of the claim, date of service, health care provider, claim amount, diagnosis, treatment and denial codes with their meaning and the standards used;
- An explanation of the Claim Administrator's internal review/appeals and external review process (and how to initiate a review/appeal or external review), and as statement of the Plan Member's right, if any, to bring a civil

action under Section 502(a) of ERISA following a final denial on internal review/appeal;

- The right to request, free of charge, reasonable access to and copies of all documents, records and other information relevant to the claim for benefits;
- Any internal rule, guidelines, protocol or other similar criterion relied on in the determination, and a statement that a copy of such rule, guideline, protocol or other similar criterion will be provided free of charge or request;
- Contact information for the applicable office of health insurance consumer assistance or ombudsman.

*Exhibit 1, SPD p. 93, Appendix B: Claims and Appeals Procedures for the PPOS and EOP Administered by Blue Cross Blue Shield of Illinois.*

105. Plaintiff is informed and believes that under the Plan, the claim is deemed exhausted if the claim administrator fails to comply with the internal claim and appeal process. In this case, the EOBs provided and the appeal responses provided failed to comply with the notice requirements, and the claims are therefore deemed exhausted. *Exhibit 1, SPD p. 98, Appendix B: Claims and Appeals Procedures for the PPOS and EOP Administered by Blue Cross Blue Shield of Illinois.*

106. The EOBs provided by the Defendants failed to provide notice of benefit denials in compliance with the Plan. The EOBs failed to provide:

- The reason for the denial other than providing vague, non-descriptive codes that provided no explanation and failed to provide the standards used;
- A reference to the benefit plan provisions on which the denial was based upon;
- A description of additional information which may be necessary to perfect an appeal and an explanation of why such material was necessary;
- An explanation of the Claim Administrator's internal review/appeals and external review process (and how to initiate a review/appeal or external review), and as a statement of the Plan Member's right, if any, to bring a civil action under Section 502(a) of ERISA following a final denial on internal review/appeal;
- The right to request, free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claim for benefits;
- Any internal rule, guidelines, protocol or other similar criterion which was relied upon in the determination, and a statement that a copy of such rule, guideline, protocol or other similar criterion would be provided free of charge or upon request.
- Contact information for the applicable office of health insurance consumer assistance or ombudsman. *See Exhibit 7.*

Plaintiff is therefore deemed to have exhausted all administrative remedies.

///

c. **Administrative Remedies Are Exhausted Based On Improper Appeal Responses And Are Exhausted In Fact Due to Plaintiff's Actions**

107. As alleged earlier in this Complaint, Detox LA, acting as the authorized Representative of the Patient under an assignment of benefits, submitted multiple levels of appeals challenging Defendants' reductions. The appeals were submitted by Detox LA and its pre-litigation counsel. Each appeal included complete patient and claim information, a detailed explanation of the basis of the challenge, and a formal demand for payment and supporting documents under ERISA.

108. As alleged earlier in this Complaint, in response to the properly submitted appeals, Defendants either failed to completely respond to the appeals or, in cases where a response was provided, Defendants failed to respond appropriately, providing only cursory or misleading responses. Defendants failed to provide ERISA-complaint responses or produce the requested documents, despite multiple requests from Detox LA and its pre-litigation counsel.

## IX. ASSIGNMENTS TO HEALTH CARE PROVIDERS ARE FAVORED UNDER ERISA LAW

109. In *Misic v. Bldg. Services Employees Health & Welfare Trust,* 789 F.2d 1377 (9th Cir. 1989) the Ninth Circuit Court determined that assignments of patient benefits under healthcare plans are a favored practice to ensure efficiency in the

delivery of healthcare services. "[P]ermitting the assignment of benefits claims to healthcare providers makes it easier for plan participants to finance healthcare and therefore advances the congressional intent behind ERISA." *Misic, supra,* at 1378. Assignees of a claim for collection of healthcare benefits have been permitted to bring suit based on derivative standing. *See also, Simon v. Blue Behav. Health, Inc.,* 208 F.3d 1073, 1081 (9th Cir. 2000) (extending derivative standing to healthcare providers to whom beneficiaries assigned their benefits claims for medical care from such providers). Granting standing to healthcare providers furthered the congressional purposes behind ERISA because it enhanced the efficiency and ease of billing among all the interested parties. *See id.* The authority of *Misic* and *Simon* was recently reaffirmed in *Bristol SL Holdings, Inc. v. Cigna Health and Life Ins. Co.,* (9th Cir. No. 20-56122, January 14, 2022).

## X. ANY ANTI-ASSIGNMENT CLAUSE IS INAPPLICABLE, WAIVED, OR UNENFORCEABLE, AND DEFENDANTS ARE ESTOPPED FROM ASSERTING ANY ANTI-ASSIGNMENT CLAUSE CONTAINED IN THE PATIENT'S HEALTHCARE PLAN

110. Under federal ERISA law, a healthcare plan, plan administrator, and its claim administrators are subject to specific rules where benefits are to be denied with respect to claims of a healthcare provider.

111. When making a claim determination under ERISA, "an administrator

may not hold in reserve a known or reasonably knowable reason for denying a claim and give that reason for the first time when the claimant challenges a benefits denial in court." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014) ("*Spinedex*"); *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719 (9th Cir. 2012) ("*Harlick*"). "A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court[.]" See *id.*

112. When a healthcare provider sues an insurer pursuant to a valid assignment, the provider "stands in the shoes of the beneficiary". *BCBS of California v. Anesthesia Care Assocs. Med. Grp., Inc.* (9th Cir. 1999) 187 F.3d 1045, 1051. Assignments are broadly construed. No "magic words" are required and instead, intent governs. *DB Healthcare, LLC v. BCBS of Arizona* (9th Cir. 2017) 852 F.3d 868, 876.

113. Anti-assignment clauses in ERISA health plans are valid and enforceable." *Spinedex*, *supra,* 770 F.3d at 1296. However, a plan administrator can waive the right to enforce an anti-assignment provision. *See Spinedex supra*. at 1296–97 (acknowledging the right to assert waiver, but concluding on the specific facts of *Spinedex* that the defendant-claims administrator was not required to raise the anti-assignment provision during the administrative claim process in that case because "there [wa]s no evidence that [the claims administrator] was aware, or

should have been aware, during the administrative process that [the plaintiff-medical provider] was acting as its patient's assignee").

114. "Waiver is often described as the intentional relinquishment of a known right." *Gordon v. Deloitte & Touche, LLP Group Long Term Disability Plan*, 749 F.3d 746, 752 (9th Cir. 2014). When an insurer communicates a denial of a claim, it must state a reason for the denial, and it will not be permitted to later rely on alternate reasons not presented in the denial letter. *See, e.g.*, *Harlick v. Blue Shield of California,* 686 F.3d 699, 719 (9th Cir.2012) ("A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court, unless the plan beneficiary has waived any objection to the reason being advanced for the first time during the judicial proceeding.").

115. Defendants in this case waived the anti-assignment provision as Defendants were aware from the claim verification, claim submittal and during the administrative process that Plaintiff was acting as its patient's assignee. *See Spinedex*, 770 F.3d at 1297. In this case, Plaintiff held a valid written Assignment of Benefits executed by Patient D. Plaintiff in its verification, inquired specifically whether the assignment of benefits was accepted and Defendants confirmed YES. Detox LA has pleaded waiver facts in this action in accordance with *Spinedex* and *Harlick* as follows:

- During the verification call, Detox LA specifically inquired as to whether Assignments were acceptable, and Defendants confirmed and affirmed, "Yes." *See Exhibit 3*
- Each Detox LA billing form included an "X" on Box 53 in the UB-04 form, notifying the Defendants that the claim was being pursued by way of an assignment from the claim submission. *See Exhibit 20*
- Defendants accepted Plaintiff's UB-04 claim from that expressly indicated "yes" in Box 53, reflecting an assignment of benefits had been made.
- Defendants' EOBs were addressed to Plaintiff, and the Defendants paid every claim submitted by Detox LA-albeit underpaid and failed to raise any anti-assignment clause. *See Exhibit 7*
- During the appeal process, Defendants were informed multiple times, that Detox LA was pursuing the claims based on an assignment and Defendants were aware of Plaintiff's assignment.
- Defendants engaged in the administrative process with Plaintiff and Plaintiff's counsel for 2.75 years before ever raising or mentioning any anti-assignment.
- For 2.75 years, Defendants never disclosed or confirmed that the Plan contained an anti-assignment clause and did not produce the Plan documents. In fact, the very first time Defendants mention anti-assignment in passing is in their January 7, 2025, letter, where they state that acceptance of an

authorized representative status is not acceptance of assignment or waiver of any anti-assignment provision. In the same letter, Defendants direct Plaintiff to refer to the anti-assignment provision, ***if any,*** in the Summary Plan Description and/or benefit booklet for more information. *See Exhibit 14*

- Defendants never informed either the Patient or Plaintiff, as the assignee, that it was ***denying or declining*** to decide the claims and/or appeals of the benefit claim because of an anti-assignment clause.

116. Defendants had multiple opportunities to invoke the Plan's anti-assignment clause but failed to do so at every meaningful stage of the claims and appeals process. Instead, Defendants expressly consented to and affirmed acceptance of the assignment during their verification call and continued to communicate and engage with Plaintiff and Plaintiff's counsel with full knowledge of Plaintiff's status as an assignee for 2.75 years before ever mentioning that there was a possibility that there is an anti-assignment and directing Plaintiff to look at the SPD and search for the anti-assignment clause. Defendants' conduct constituted clear and affirmative recognition of the assignment and induced Plaintiff to reasonably rely on that recognition throughout the administration of the claim. The only references to any anti-assignment provision appeared months later—and only in passing—in BCBS IL's letters dated January 7, 2025, and February 18, 2025. The January 7th letter stated: *"If we accept a form naming an authorized representative,*

*it is not an acceptance of assignment or waiver of any anti-assignment provision of the member's benefit information. Please refer to the anti-assignment provision, if any, in the Summary Plan Description and/or benefit booklet for more information."* (emphasis added). The February 18th letter similarly stated that BCBS IL was not waiving any anti-assignment provision by providing requested documents. These after-the-fact disclaimers cannot cure Defendants' earlier failure to assert the clause or their prior, repeated affirmations acknowledging Plaintiff's authority to act as the assignee. Defendants' course of conduct constitutes a waiver of the anti-assignment clause, or, at minimum, estops Defendants from asserting it now after inducing Plaintiff's reliance and participating in the claims process as though the assignment were accepted.

117. Further, Defendants are estopped from asserting the anti-assignment in the Plan by the fact that during the claim administrative review process, they represented that assignment was acceptable and that Detox LA was eligible to receive Plan benefits and paid benefits. Equitable estoppel "holds the fiduciary to what it had promised and operates to place the person entitled to its benefit in the same position he would have been in had the representation been true." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014) (internal quotation marks and citations omitted).

118. These facts establish an estoppel and waiver of any alleged anti-

assignment. The authority of *Spinedex* and *Harlick* on the waiver and estoppel issues was reaffirmed in *Beverly Oaks Physicians Surgery Center, LLC v. Blue Cross and Blue Shield of Illinois,* 983 F. 3d 435 (9th Cir. 2020) ("*Beverly Oaks*"). Under *Beverly Oaks*, the promise and the clear attestation during the verification call that assignment was acceptable and that Detox LA was eligible to receive plan benefits as an out-of-network healthcare provider is sufficient to estop Defendants from asserting a plan anti-assignment clause in this case.

119. Section 29 U.S.C. § 1133 states that every employee benefit plan shall:

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits have been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim. (*Emphasis added*)

120. The Claim Notification Regulations define an "adverse benefit determination" to which its requirements apply as including any "denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit," including an adverse benefit determination based on eligibility. 29 C.F.R. § 2560.503-1(m)(4)(i). The Claim Notification Regulations requires the "specific

reason or *reasons*" for the denial to be provided in writing to the participant and a "reference to the specific plan provisions" for the denial. 29 C.F.R. § 2560.503-1(g)(1)-(2) (emphasis added). Thus, requiring an administrator to inform a claimant of an anti-assignment provision when the administrator has actual or constructive knowledge that a medical provider is operating under assignment falls perfectly in line with the Claim Notification Regulations because an anti-assignment prohibition is based on the language of a health plan. *See Spinedex*, 770 F.3d at 1296.

121. Regulations regarding claim notifications mandate that ERISA claimants will be informed of issues that might exist regarding a denied claim. These issues include matters that may be relevant to litigation. *See id.* § 2560.503- 1(j)(4)(i) (requiring the final benefit denial to include "a statement of the claimant's right to bring an action under" 29 U.S.C. § 1132(a)).

122. As *Harlick* and *Spinedex* recognize, ERISA requires that plan fiduciaries decide benefit claims under a full and fair process that informs plan participants and beneficiaries of the basis for any denial and that does not impede participants and beneficiaries from asserting and perfecting their claims for plan benefits. Because Defendants never informed either the plan participant or Plaintiff, as the assignee, that it was ***denying or declining*** to decide the claim and/or appeal of the benefit claim because of an anti-assignment clause, and through this failure impeded the Patient and/or Plaintiff from pursuing the claim for benefits, the

defendants are now precluded from relying on the anti-assignment provision in this litigation.

## XI. DETOX LA HAS STANDING TO PURSUE CLAIMS AGAINST DEFENDANTS UNDER ERISA FOR PAYMENT OF BENEFITS AND ATTORNEY'S FEES

123. Defendants are the proper party defendants for an ERISA benefits recovery action. *See, Harris Trust & Sav. Bank v. Salomon, Smith Barney, Inc.*, 530 U.S. 238, 247 (2000); *Cyr v. Reliance Standard Life Ins. Co.*, 647 F.3d 1202 (9th Cir. 2011).

124. ERISA governs all aspects of health and medical benefits under ERISA plans and authorizes a civil action to recover unpaid benefits and attorney's fees. Detox LA has standing to bring this lawsuit arising from its Assignment from Patient.

125. Plaintiff has been forced to initiate this action due to Defendants' wrongful denial of benefits, failure to comply with ERISA's procedural requirement and repeated failure of the Defendants to comply with the Plan terms in adjudication of Plaintiff's claim. As a direct result of Defendants' misconduct, Plaintiff has incurred significant attorneys' fees and litigation costs to vindicate its rights under the ERISA Plan. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff seeks an award of reasonable attorneys' fees and costs. Such relief is appropriate considering Defendants' systematic procedural and substantive ERISA violations and is

necessary to deter future misconduct and to effectuate ERISA's remedial purposes.

## IX. DEFENDANTS' PROCEDURAL VIOLATIONS WARRANT DENOVO REVIEW

126. In the Ninth Circuit, courts apply a multi-step framework to determine whether de novo review or abuse of discretion applies in ERISA benefits cases. The first question is whether the plan unambiguously grants the administrator discretionary authority to specifically determine final eligibility for benefits or construe plan terms. General authority to administer the plan and/or pay benefits is not enough. *See Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 963 (9th Cir. 2006) (en banc). If not, then de novo review automatically applies under *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989), and the burden is on the plan administrator to prove that full and exclusive discretion was clearly and unequivocally granted, as confirmed in *Simkins v. NevadaCare, Inc*., 229 F.3d 729, 733 (9th Cir. 2000).

127. If discretionary authority is established by the administrator, the court proceeds to examine whether the administrator substantially followed ERISA's procedural safeguards, especially those outlined in 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1. These safeguards include requirements for timely notice, clear explanations of denials, citations to plan provisions, disclosure of reimbursement methodologies, and a meaningful opportunity for review. The Department of

Labor's interpretive guidance, which the Ninth Circuit considers persuasive, confirms that even partial payments constitute adverse benefit determinations that trigger these obligations, including full disclosure of cost-sharing terms and reimbursement methodology, as well as an opportunity for meaningful review. *See* ERISA Claims Procedure Regulation: Final Rule, 65 Fed. Reg. 70246, 70255 (Nov. 21, 2000); FAQs About the Benefit Claims Procedure Regulation, U.S. Dep't of Labor (2002), Q&A-7.

128. If the administrator fails to comply with any of these procedural requirements in a "wholesale and flagrant" manner, courts must disregard any discretionary authority and apply de novo review. *See Abatie* 458 F.3d at 971–72 (en banc), reaffirmed in *Saffon v. Wells Fargo & Co.*, 522 F.3d 863, 872 (9th Cir. 2008). In reaching this holding, *Abatie* cited examples where de novo review was appropriate due to serious procedural violations: in *Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan*, 349 F.3d 1098, 1106 (9th Cir. 2003), where the administrator failed to timely decide the claim; in *Lang v. Long-Term Disability Plan for Employees of Diagnostic Specialists, Inc.*, 125 F.3d 794, 799 (9th Cir. 1997), where the administrator shifted justifications between the initial and final denial; and in *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 (10th Cir. 2003), where the administrator's failure to issue a final decision on an appeal warranted de novo review, with the court noting that "deference to the

administrator's expertise is inapplicable where the administrator has failed to apply his expertise to a particular decision."

129. If there is no flagrant procedural violation, the court next considers whether the plan administrator operated under a conflict of interest. When the same entity both evaluates or decides claims and pays benefits, this conflict does not eliminate deference but requires the court to apply abuse-of-discretion review with heightened skepticism. This principle, established in *Metropolitan Life Insurance Co. v. Gle*nn, 554 U.S. 105, 115–17 (2008), recognizes that an administrator's dual role as both evaluator and payor creates a financial incentive to deny benefits. In *Abatie*, 458 F.3d at 965–69, the Ninth Circuit explained that skepticism is fact-dependent and that a conflict may justify giving little or no deference to the administrator's decision where procedural irregularities such as inconsistent explanations, failure to investigate, or other signs of bias suggest the process was "tainted." This flexible, case-specific approach prevents discretionary review from becoming a shield for arbitrary or self-interested conduct. *See Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676–77 (9th Cir. 2011) (applying abuse-of-discretion review with heightened skepticism and holding that repeated procedural violations rendered the denial arbitrary and capricious).

130. Finally, once the appropriate standard of review is determined, the court applies it. Where de novo review applies, as it does here, the court independently

evaluates whether benefits were owed, based on the administrative record and any admissible supplemental evidence. *See Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1094 (9th Cir. 1999). Under de novo review, no deference is given to the administrator's decision; rather, the court assesses whether the plaintiff is entitled to benefits under the plan's terms. Plan terms are interpreted as they would be understood by a person of average intelligence and experience, with ambiguities construed against the insurer. *See Simkins*, 229 F.3d at 734–35.

131. By contrast, standard abuse-of-discretion review without heightened skepticism applies only if the plan clearly grants full discretion, the administrator substantially complies with all ERISA procedural requirements and fiduciary duties, and no conflict of interest exists. Even then, under the abuse-of-discretion standard, the decision must be upheld only if it is logical, plausible, and supported by the administrative record. *See Salomaa*, 642 F.3d at 676-81 (setting forth the abuse-of-discretion standard and emphasizing that procedural irregularities remain a significant factor in its application, as deference requires a fair, reasoned, and procedurally sound decision (citing *Abatie* 458 F.3d at 974)).

**a. <u>Defendants' Conduct Justifies De Novo Review</u>**

132. Defendants' handling of the benefit determination in this case reflects serious procedural irregularities and supports the application of de novo review. The benefit verifications were done through BCBS IL. The benefit quotes and eligibility

verification provided during the pre-verification call were not framed as tentative plan summaries but were presented as definitive Plan-based reimbursement terms. Defendants thereafter issued EOBs that applied inconsistent and arbitrary pricing, failed to cite any Plan exclusion, limitation, or authority, and failed to disclose the methodology used to calculate the Allowed Amounts. Plaintiff subsequently undertook a lengthy and comprehensive appeals process, which proved futile, as Defendants continued to mishandle the claim and persist in serious and repeated procedural irregularities throughout the review process. Defendants exercised discretionary authority under the Plan. Their failure to disclose controlling Plan terms and to provide a reasoned explanation for the denial compromised the procedural integrity of the claims process and warrants de novo review. *See Abatie*, 458 F.3d at 972 (procedural irregularities justify de novo review).

130. Under § 1133 and 29 C.F.R. § 2560.503-1, Defendants were required to provide a "specific reason or reasons for the adverse determination," cite "the specific plan provision on which the determination is based," and describe "any internal rules, guidelines, protocol, or similar criterion" relied upon. Defendants failed to satisfy each of these obligations. The denials provided were vague, conclusory, and unsupported by any plan-based explanation. The determinations were inconsistent with the representations made during the verification process and failed to comply with the Plan terms. This contradiction, paired with inconsistent

administrative behavior and failure to honor procedural safeguards, constitutes a wholesale violation of ERISA's claims procedures. *Id.; Saffon*, 522 F.3d at 872.

133. The EOBs also failed to clearly articulate any reason for the price reduction or cite relevant Plan language, leaving both the provider and patient unable to meaningfully assess the rationale behind the underpayment. As the Ninth Circuit has emphasized, "[T]he insurer should be expected to set forth any limitations on its liability clearly enough for a common layperson to understand; if it fails to do this, it should not be allowed to take advantage of the very ambiguities that it could have prevented with greater diligence." *Simkins*, 229 F.3d at 733 (quoting *Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 540 (9th Cir. 1990)).

134. Although the claim administrator and the Plan administrator (the payor) may be formally distinct entities, their coordinated roles in the verification, adjudication, and payment process create a functional overlap that impacts each entity's financial interests. This structural conflict of interest, where one entity's benefit determination directly affects the financial liability of an affiliated entity, further warrants heightened judicial scrutiny under a de novo standard of review. *See Glenn*, 554 U.S. at 115–17; *Abatie*, 458 F.3d at 968–69. Because Defendants failed to comply with ERISA's procedural requirements, issued an internally inconsistent and unexplained denial, and operated under a structural conflict of interest, the Court should apply de novo review when evaluating Plaintiff's claims

for benefits due under § 1132(a)(1)(B).

135. In the alternative, if the Court applies abuse-of-discretion review despite the procedural violations supporting de novo review, it must do so with heightened skepticism. BCBS IL dual role - - verifying benefits, pricing claims, and issuing the EOB - - reflects a structural conflict of interest. This conflict is compounded by serious procedural irregularities, including contradictory benefit representations, lack of Plan citations, lack of application of Plan terms regarding the Allowed Amount as well as the failure to explain pricing methodology. Together, these factors taint the integrity of the denial and preclude deference. *Id.; Salomaa*, 642 F.3d at 676–77.

**COUNT ONE**

**(Enforcement Under 29 U.S.C. § 1132 (a)(1)(B) For Failure To Pay ERISA Plan Benefits And For Recovery Of Reasonable Attorney's Fees And Costs Under 29 U.S.C. § 1132 (G)(1))**

The allegations of the prior paragraphs of this Complaint are hereby incorporated by reference in this First Count as if fully set forth at length.

1. Under 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary may bring a civil action to recover benefits due under the terms of an ERISA plan.

2. This cause of action is alleged by Plaintiff for relief in connection with claims medical detox treatment services rendered in connection with the Plan.

3. Detox LA seeks to recover ERISA Plan benefits and enforce rights to benefits payment under 29 U.S.C. § 1132 (a)(1)(B); and under 29 U.S.C. § 1132 (g)(1) for recovery of reasonable attorney's fees and costs. Detox LA has standing to pursue these claims as the assignee of member benefits. As the assignee of benefits, Plaintiff is a "beneficiary" entitled to collect benefits and is the "claimant" for the purposes of the ERISA statute and regulations. ERISA authorizes actions under 29 U.S.C. § 1132 (a)(1)(B) to be brought directly against Defendants as the party with actual control over the benefit and payment determinations with respect to Detox LA's claims.

4. Defendants improperly underpaid Plaintiff's claims for medically necessary services rendered to a covered plan participant, despite prior benefit verification, and representations regarding coverage and reimbursement terms.

5. The underpayments of benefits were inconsistent with the terms of the governing Plan as discussed in this Complaint and constituted a violation of ERISA § 502(a)(1)(B).

6. Plaintiff is informed and believes that no Medicare reimbursement rates apply to the inpatient detoxification and residential care services provided by Detox LA. To the extent Defendants attempt to justify their improper reimbursement practices by invoking Plan language that purports to grant BCBS IL discretion to apply a so-called "proprietary fee schedule," Plaintiff is informed and believes that

this provision functions as an opaque and unregulated "black box," enabling BCBS IL to unilaterally and arbitrarily set reimbursement rates at any level it chooses, without transparency, explanation, or any objective standard. Defendants have improperly calculated the Allowed Amount as defined under the Plan, and the payments issued bear no reasonable basis or justification. Instead, the Allowed Amounts were determined in an arbitrary and capricious manner, in direct violation of the Plan's terms. Such conduct reflects a clear disregard for the Plan's requirements and a failure to fairly reimburse covered services.

6. By reason of the foregoing, Detox LA is entitled to recover ERISA benefits due and owing in an amount to be proven at trial, and Detox LA seeks recovery of such benefits by way of the present action.

**COUNT II**

**CLAIM FOR ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132(g)(1)**

The allegations of the prior paragraphs of this Complaint are hereby incorporated by reference in this First Count as if fully set forth at length.

1. Pursuant to 29 U.S.C. § 1132(g)(1), the Court may award reasonable attorneys' fees and costs to either party in an ERISA action.

2. Defendants' conduct—including improper denial of benefits, failure to follow procedural safeguards, necessitated this action.

3. Plaintiff has incurred and will continue to incur attorneys' fees and litigation expenses in pursuing its claims.

4. An award of fees and costs is warranted to compensate Plaintiff, deter future violations, and promote compliance with ERISA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Detox LA LLC, as the valid assignee of the participant in the self-funded ERISA Plan, respectfully requests that Court enter judgment in its favor and against Defendants, and award the following relief:

1. Pursuant to 29 U.S.C. § 1132(a)(1)(B), an award of monetary damages in the amount of benefits due under the terms of the applicable ERISA Plan, including payment for medical detox treatment services rendered to Patient D Defendants, through their authorized representatives, expressly represented that reimbursement would be issued and that the assignment was acceptable. Plaintiff rendered services in reliance on that representation, and Defendants refused and failed to pay Plaintiff's claim in accordance with the Plan terms. Plaintiff is entitled to recover the underpaid amounts accordingly.

2. Pursuant to 29 U.S.C. § 1132(g)(1), an award of reasonable attorneys' fees and litigation costs incurred in connection with this action, as appropriate considering Defendants' improper denial of benefits, and violations of ERISA's disclosure and claims procedure requirements.

3. An award of prejudgment interest on all unpaid or wrongfully withheld amounts at the maximum legal rate, and post judgment interest pursuant to 28 U.S.C. § 1961 from the date of entry of judgment until full satisfaction thereof.

4. Any additional legal or equitable relief as the Court may find just, proper, and necessary to enforce Plaintiff's rights under ERISA and to remedy Defendants' violations.

**Dated: January 5, 2026** Respectfully submitted,

**HAKAKIAN WILLIAMS LAW GROUP PC**

By: /s/ Mina Hakakian
Mina Hakakian,
Attorneys for Plaintiff Detox LA, LLC